**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DONALD GRADY, | : | |
|    Petitioner, | : | |
| | : | |
|   v. | : | Case No. 3:22-cv-597 (MPS) |
| | : | |
| ANGEL QUIROS, COMMISSIONER OF | : | |
| CORRECTION, | : | |
|    Respondent. | : | |

**RULING AND ORDER**

Petitioner Donald Grady, an inmate incarcerated at MacDougall-Walker Correctional

Institution in Suffield, Connecticut, filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254. He challenges his conviction, after a jury trial, for sexual assault and risk of

injury to a child. Pet., ECF No. 1. In his amended petition, Petitioner requests habeas relief on

the basis of ineffective assistance of his trial defense counsel and his actual innocence. Am. Pet.,

ECF No. 16.

Respondent has filed a motion to dismiss, arguing that Petitioner has submitted a "mixed

petition" because he has not exhausted all of the grounds for relief asserted in his amended

petition. Mot. to Dis., ECF No. 17. For the following reasons, the motion to dismiss is granted.

## I.     Procedural Background

Petitioner was the defendant in a criminal case, docket number CR09-0072182-T, in the

judicial district of Ansonia/Milford at Milford after he was arrested on one count of sexual

assault in the first degree in violation of General Statutes § 53a-70(a)(1), one count of sexual

assault in the first degree in violation of General Statutes § 53a-70(a)(2),[1] one count of sexual

---

[1] Connecticut General Statutes § 53a-70(a)(1)-(2) provides: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person

assault in the third degree in violation of General Statutes § 53a-72a(a)(1)(A),[2] and three counts

of risk of injury to a child in violation of General Statutes § 53-21(a)(2).[3] *See Grady v. Warden*,

No. CV144006185S, 2019 WL 1093301, at *1 (Conn. Super. Ct. Jan. 28, 2019). After a jury

trial, Petitioner was found guilty of all counts except the count of sexual assault in the first

degree in violation of General Statutes § 53a-70(a)(1). *Id.*

On February 14, 2012, the trial court imposed a total effective sentence of thirty years of

incarceration, ten years of which were mandatory, followed by five years of parole with special

conditions, and lifetime registration as a sexual offender. *State v. Donald H.G.*, 148 Conn. App.

398, 403 (2014).

Direct Appeal

Petitioner filed a direct appeal, arguing: (1) the trial court erred by allowing the state to

introduce evidence of uncharged misconduct; (2) the trial court erred when it refused to conduct

an in-camera review of the victim's psychological records; (3) the trial court's improper response

to a question posed by the jury during its deliberations deprived him of a fair trial; and (4) the

prosecutor committed prejudicial misconduct during closing and rebuttal argument. *Id.* at 400.

The Appellate Court affirmed the trial court's judgment. *Id.* at 427. It held that: (1) the

---

which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person[.]"

[2] Connecticut General Statutes § 53-72a(a)(1)(a) provides:  "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person[.]"

[3] Connecticut General Statutes § 53-21(a)(2) provides: "Any person who … has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child[.]"

trial court did not abuse its discretion in admitting prior uncharged sexual misconduct evidence involving the victim (*id.* at 408-412); (2) the trial court did not abuse its discretion by denying Petitioner's in-camera review request because Petitioner's request was vague and speculative and he had failed to show that the victim had a mental condition affecting her "ability to perceive, recall, or relate events or her testimonial capacity[;]"(*id.* at 413-414); (3) there was no reasonable probability the jury was misled by a trial court response to a jury inquiry, when viewed in combination with the court's main instructions to the jury (*id.* at 414-420); and (4) the prosecutor did not make any inappropriate remarks during closing and rebuttal argument and Petitioner had failed to provide legal authority for his claim of improper prosecutorial conduct (*id.* at 420-427).

On May 7, 2014, the Connecticut Supreme Court denied certification for discretionary review. *State v. Donald H.G.*, 311 Conn. 951 (2014).

First Habeas Action: Grady v. Warden

On April 30, 2014, Petitioner filed his first of two applications for writs of habeas corpus in the Connecticut Superior Court for the Judicial District of Tolland. This first habeas action was assigned docket number TSR-CV14-4006185-S. *See Grady*, No. CV144006185S, 2019 WL 1093301, at *1.

In a third amended petition, Petitioner asserted that he received ineffective assistance from his counsel in violation of the Sixth Amendment "on four delineated grounds." *Id.* at *3; *see* Resp't ex. D, ECF No. 18-10. He asserted that his trial defense counsel was ineffective (1) by failing to elicit testimony from four witnesses (Linda and Gary Hoppes and Dennis and Janet Bludniki) with respect to his presence at a December 24, 2007 Christmas party; (2) by engaging in an attorney-client sexual relationship with Petitioner; (3) by referring to the complainant as a

3

"victim" during trial and when he failed to object and correct the prosecutor's use of the term "victim;" and (4) by failing to "investigate, consult and present" Theresa Charette, who, the petitioner contends, would have testified that he was not present at a family ski trip at Okemo Mountain during which the victim claimed that the petitioner sexually assaulted her – part of the uncharged sexual misconduct presented at trial. *See Grady*, No. CV144006185S, 2019 WL 1093301, at *4-*7; *see also* Resp't ex. A-1, Trial Transcript (victim testimony), ECF No. 18-1 at pp. 75-78.

After a trial, the state habeas court denied Petitioner's amended petition on all four grounds. *Grady*, No. CV144006185S, 2019 WL 109330, at *5-*7. As to the first ground, the habeas trial court concluded (1) that Petitioner failed to show his trial defense counsel was "deficient for not asking the Hoppes and Bludnickis about the petitioner's absence from the December 24, 2007 family party[,]" which "would have jeopardized the defense to the charge arising from another date and incident when the petitioner had not acknowledged his presence and physical contact with [the victim,]" and (2) that Petitioner failed to show how he was prejudiced. *Id.* at *5.

The habeas trial court denied Petitioner's second ground because Petitioner's assertion of his sexual relationship with counsel was "completely not credible," "outlandish and, … only intended to humiliate former counsel." *Id.* at *6.

As to the third ground, the habeas court recognized that the word "victim" had been used during the jury trial but concluded that "its usage was not so prevalent as to prejudice the petitioner." *Id.* at *7.

4

With respect to the fourth ground, the habeas trial court noted that Charette testified at the habeas trial only that she did not know if Petitioner was at Okemo on the weekend at issue, which "leaves open the reasonable possibility that the petitioner was at Okemo, unbeknownst to [her] and not seen by her." *Id.* The habeas trial court concluded that Charette's "testimony was of marginal impeachment value and does not undermine this court's confidence in the outcome of the criminal trial." *Id.*

Petitioner appealed the trial court's denial, asserting that the habeas court improperly found no ineffective assistance of counsel where his trial defense counsel (1) had failed to present testimony from four witnesses about the Petitioner's whereabouts at the family Christmas party on December 24, 2007; (2) referenced the complainant as the "victim" and failed to object or request a curative instruction when the prosecutor also referred to the complainant as the "victim," and (3) by "not wanting to" investigate the Okemo ski house allegations "and present an alibi defense, after Grady informed counsel to do so with Ther[esa] (Tess) Charette who[m] CD [the victim] had placed on the scene the night in question." *See* Pet'r's ex. 14(a), Pet'r Appellate Brief, ECF No. 1-2 at 2. *See also Donald G. v. Comm'r of Correction*, 203 Conn. App. 58, 59–60, 74, *cert. denied*, 337 Conn. 907 (2021).

As to the first ground, the Appellate Court concluded that the habeas trial court properly held that Petitioner "failed to sustain his burden of overcoming the presumption that counsel's actions were the result of sound trial strategy." *Id.* at 69-70.

With regard to Petitioner's second claim, the Appellate Court concluded that Petitioner had failed at trial to demonstrate that he was prejudiced by any deficient performance by trial

defense counsel arising from references to "the victim" as Petitioner had been acquitted of one of the sexual assault charges. *Id.* at 72-73.

With respect to his third ground – the claim that "trial counsel rendered ineffective assistance by neglecting to interview and to procure the testimony of an alleged witness, Theresa Charette, who claimed that she had not seen the petitioner during the Okemo ski trip," *id.* at 74 –, the Appellate Court noted that the Petitioner's trial defense counsel had testified in the habeas trial that the Petitioner had admitted to him being present at the Okemo ski trip. As a result, the Appellate Court concluded that the "decision of the petitioner's trial counsel not to pursue testimony from a witness in an effort to rebut a claim that the petitioner had readily admitted as true cannot be deemed unreasonable or tactically unsound." *Id.* at 74-75.

On June 29, 2021, the Connecticut Supreme Court denied Petitioner's certification for appeal. *Donald G. v. Comm'r of Correction*, 337 Conn. 907 (2021).

Second Habeas Action

On June 19, 2017, Petitioner filed another application for a writ of habeas corpus in the Judicial District of Tolland assigned docket number TSR-CV17-4008907-S. *Donald G. v. Comm'r of Correction*, No. CV174008907S, 2022 WL 375499, at *1 (Conn. Super. Ct. Jan. 20, 2022). In his amended petition, Petitioner asserted ineffective assistance of appellate counsel on his direct appeal. *Id.* The habeas trial court observed that Petitioner's "amended petition aver[red] ten distinct ways in which appellate counsel rendered deficient performance on direct appeal, although the petitioner has grouped them together into four groupings." *Donald G.*, 2022 WL 375499, at *6. The habeas trial court framed the four groupings as follows:

> First (grounds one, two, and three), allegations related to the use of term "victim" by both
> the prosecutor and defense counsel; second (grounds four, five, and six), allegations

related to the state's use of the petitioner's request for counsel as consciousness of guilt evidence; third (grounds seven and eight), allegations related to collusion between the prosecutor and defense counsel to sabotage the petitioner's alibi defense and mislead the jury; and fourth (grounds nine and ten), allegations related to improprieties when the state pointed to an individual in the public gallery of the courtroom to bolster the complainant's testimony and discredit the defense.

*Id.*

The habeas trial court held that Petitioner failed to show that his appellate counsel was ineffective for failing to raise a claim on direct appeal challenging the use of the term "victim" as the claim did not present a strong issue for appeal and "was not one that reasonably competent appellate counsel should raise." *Id.* at *7. Similarly, the habeas trial court noted that Petitioner's appellate counsel assessed that the references to his wanting an attorney "were not a major factor that contributed to his convictions" and therefore did not present a strong due process claim for appeal. *Id.* at *8. The habeas trial court concluded that Petitioner had not presented any evidence of "'collusion' between the prosecutor and his defense counsel that served to undermine or weaken a defense." *Id.* at *9.

As to Petitioner's claim that appellate counsel was ineffective for failing to raise the issue of the prosecutor's gesture pointing to an individual, the habeas trial court concluded Petitioner had shown neither that his appellate attorney "rendered deficient performance by not raising a claim on appeal regarding the prosecutors alleged gesture[,]" nor that he would have prevailed on appeal had the claim been raised. *Id.* at *10.

On April 11, 2022, Petitioner filed an appeal of the denial of his second habeas action. *See* case detail for TSR-CV17-4008907-S available on the website for the Connecticut Judicial Branch.[4] At present, his appeal remains pending.[5]

---

[4]https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV174008907S.

[5]*See* Case Detail for AC 45522 available on the website for the Connecticut Judicial branch.

## II.    Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). That statute provides that a federal court cannot grant habeas relief unless "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

"The exhaustion doctrine recognizes that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Thus, "[t]he exhaustion requirement ... serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). "To provide the State with the necessary 'opportunity,' [to pass upon and correct an alleged violation of its prisoner's federal rights] the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted).

A petitioner's claims may be presented to the state courts either on direct review or in state post-conviction proceedings. However, review in the highest court must be sought, even if such review is discretionary and unlikely to be granted. This "give[s] the state courts one full

---

http://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=76906&Type=AppealNo.

opportunity to resolve any constitutional issues by invoking one *complete* round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added); *see* 28 U.S.C. 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has a right under the law of the State to raise, by any available procedure, the question presented.").

Moreover, a petitioner only satisfies the exhaustion requirement if he presents the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it. This allows the state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*per curiam*) (internal quotation marks and citation omitted); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (exhaustion of state remedies requires a petitioner to present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.") (citations omitted).

A federal claim has been fairly presented to the state courts only if it "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal parentheses and quotation marks omitted). A petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim in order to find material ... that does so." *Id.* at 32. Thus, "the claim presented to the state court ... must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted). Failure to exhaust state court remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort

to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*); 28 U.S.C. §
2254(b)(1)(B).

When a petitioner files a mixed petition, *i.e.*, a petition containing both exhausted and
unexhausted claims, the district court is generally required to dismiss the petition. *See Pliler v.
Ford*, 542 U.S. 225, 230 (2004) (citing *Rose v. Lundy*, 455 U.S. 509 510, 522 (1982)). Under
some circumstances, however, the district court may stay a mixed habeas petition to enable the
petitioner to present his unexhausted claims to the state court and then return to federal court for
review of all his claims. A stay should be utilized only in limited circumstances, where the
petition contains both exhausted and unexhausted claims, the petitioner demonstrates good cause
for failing to exhaust all claims before filing the federal petition, and the petitioner may be time-
barred if the case is dismissed. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Before
granting a stay, the district court must determine that "the unexhausted claims are not plainly
meritless, [that] the petitioner has good cause for failing to exhaust, and [that] the petitioner did
not engage in abusive or dilatory litigation tactics." *Woodard v. Chappius*, 631 F. App'x 65, 66
(2d Cir. 2016) (citing *Rhines*, 544 U.S. at 277-78).

## III.   Discussion

Petitioner asserts four grounds for habeas relief: (1) violation of Petitioner's Sixth and
Fourteenth Amendment due process rights based on his trial defense counsel's failure to elicit
testimony from four defense witnesses about Petitioner's absence at a family party on December
24, 2007 to provide him an alibi for charged sexual conduct; (2) violation of Petitioner's Sixth
and Fourteenth Amendment rights due to trial defense counsel's and the prosecutor's referring to
the complainant as a victim and defense counsel's failure to seek a curative instruction; (3)

violation of Petitioner's Sixth and Fourteenth Amendment due process rights from trial defense counsel's failure to investigate "anyone in the petitioner's case after requesting $25,000.00 to do so" and for failing to present an alibi defense through the testimony of the victim's "friend when post-trial she displaced petitioner from the scene of the night of the alleged assault[;]" and (4) Petitioner is actually innocent of the crimes of which he was convicted. Am. Pet., ECF No. 16 at 1-12.

Respondent does not challenge Petitioner's exhaustion of his first and second grounds for relief. Resp't Mem. at 25-29, ECF No. 18. Respondent argues that the first part of Petitioner's third ground for relief—that his counsel provided ineffective assistance by failing to investigate anyone in Petitioner's case after requesting money to do so—and Petitioner's fourth ground asserting his actual innocence were both not exhausted in the Connecticut courts. Id. at 30.[6]

Thus, the Court must first consider whether Petitioner's amended petition constitutes a mixed petition with both exhausted and unexhausted claims.

A.    Ground Three

In ground three of his amended petition, Petitioner asserts ineffective assistance of counsel because "defense counsel did not investigate anyone in the petitioner's case after requesting $25,000.00 to do so" and failed to present an "alibi defense with [the victim's] friend when post-trial she displaced petitioner from the scene of the night of the alleged assault[.]" Am. Pet., ECF No. 16 at 7.[7]

---

[6] Respondent concedes exhaustion is satisfied for the second claim in ground three, which asserts trial defense counsel was ineffective for failing to present the testimony of the victim's friend, Charette, that she was not aware of Petitioner's presence at the Okemo ski house on the date the victim testified Petitioner sexually assaulted her. Id.

[7] After he submitted his objection to the motion to dismiss, the Petitioner submitted an additional exhibit, which the Court agreed to consider. See ECF Nos. 26 & 27. The additional exhibit is a March 10, 2010 letter to the

Petitioner disagrees with Respondent's assertion that he failed to exhaust his claim concerning his counsel's failure to investigate "anyone" in his case despite taking money to do so. Pet'r Opp., ECF No. 25-1 at 29. In his federal amended petition, Petitioner explains that his trial defense counsel admitted that Investigator Markle was available but did not investigate Charette based on his recollection that Petitioner had admitted that he was at the house in Okemo on the evening when the alleged sexual misconduct occurred.[8] Am. Pet., ECF No. 16 at 8-9. He also asserts that Markle "never conducted any full interviews with any of the witnesses" in the case. *Id.* at 8. Petitioner's opposition brief argues that his third ground "remains exactly the same"—whether his trial counsel was ineffective for failing to investigate Charette—and that his third ground in the federal amended petition is "only more descriptive in identifying the fact that no economic limitations prevented [trial defense counsel] from [conducting] the investigation[.]" Pet'r Opp., ECF No. 25-1 at 29. But then Petitioner goes on to refer to trial defense counsel's "failure to investigate anyone, including alibi witnesses," *id.*, and to assert that his trial defense counsel made the unreasonable decision not to request Markle to investigate Charette *and* the other individuals at the Okemo house who could have provided him with an alibi or provided testimony about whether Petitioner "did something" to the victim. *Id.* at 30-31; *see also id.* at 30 ("Nor did [trial defense counsel] or his investigator…make any efforts to contact Charette, *or Danielle* [.] about that evening.") and *id.* at 31 ("So [] trial defense counsel] made the unreasonable decision to not investigate any of the witnesses from Okemo ski house, including

---

Petitioner from his trial counsel requesting a $25,000 retainer to enable trial counsel's investigator to interview potential witnesses. The letter states that "this matter is going to call for a good deal of investigation prior to trial." ECF No. 26-1 at 3.

[8] In support of his claim, Petitioner has provided the letter from his trial attorney that was presented to the habeas court as exhibit 22 explaining that Markle Investigations had been retained to interview the State's potential witnesses for his case. *See* Pet'r ex., ECF No. 26-1.

Charette, who would have been an excellent alibi witness. Nor [] did [trial defense counsel] attempt to investigate anybody else alleged by [the victim] to be at the Okemo ski house."). Petitioner maintains, for example, that the victim's friend who was in the same bunk room could have testified that she did not hear or see Petitioner wake the victim up and "drag[] [the victim] outside to the deck" (where the victim testified the sexual conduct occurred). *Id.* at 29, 35; *see also* Resp't ex. A-1, Trial Transcript (victim testimony), ECF No. 18-1 at pp. 73-76; *see also id.* at 34 (asserting that "Grady paid [trial defense counsel] $25,000 for investigative services, plenty to cover any interview of Charette and Danielle about their…visit to Okemo") and id. ("[trial defense counsel] knew…that Grady was insisting that [counsel] investigate the allegations by talking to Charette and Daniel[le]."). In short, while Petitioner's pleadings in this Court are not a model of clarity, it is reasonable to read them, as the State does, to assert more than just that counsel was ineffective for failing to investigate and procure as a witness Charette alone.

But Petitioner did not exhaust this broader claim in state court. Petitioner's third amended petition in his first state habeas matter (TSR-CV14-4006185-S)  alleged that a post-trial investigation revealed that Charette confirmed Petitioner was "never present on the scene at all during the alleged Okemo incident" and his trial defense counsel's "performance was deficient because … [h]e failed to adequately investigate, consult and present Theresa 'Tess' Charette as a witness to impeach the complaining witness and discredit the state's highlighted theory that petitioner sexually assaulted complainant at Okemo, and was present at Okemo." Resp't ex. D, ECF 18-10 at 13-14.

The habeas trial court decision addressed only Petitioner's ineffective trial defense counsel claim presented in his amended petition— whether his counsel was ineffective for

failure to adequately "investigate, consult and present" Charette as a witness for impeachment—when it concluded that Charette's habeas trial testimony left open a "reasonable possibility" of Petitioner's presence at Okemo and was of "marginal impeachment value[.]" *See Grady*, No. CV144006185S, 2019 WL 1093301, at *7; Resp't ex. D, ECF No. 18-10 at 12-14.

> In his appeal of the habeas court decision, Petitioner framed his fourth ground as:

> Did the habeas court err when finding [trial counsel] was not ineffective by "not wanting to" investigate Okemo ski house allegations and present an alibi defense, after Grady informed counsel to do so with [Charette] wh[om] CD [the victim] placed on the scene in the night in question.

Pet.'r's ex. 14(a), ECF No. 1-2 at 2. In his appellate brief, Petitioner challenged the trial court's conclusions about Charette's testimony, which he claimed would have provided "a clear impeachment" of the victim's "version of events[,]" "would have likely raised doubts in the minds of jurors[,]" and was not of "marginal impeachment value" as it would have "challenged the most prejudicial testimony" by the victim. *Id.* at 33-35. His brief presented no specific question of error asserting that the habeas trial court erroneously failed to consider whether his trial counsel rendered defective performance by not requesting an investigation into the individuals other than Charette who were at the Okemo house. *See id.* The appellate court rejected this ground for appeal as Petitioner's admission that he was at Okemo "stands in firm opposition" to his claim that Charette could testify that she had not seen him at Okemo and thereby undermine the victim's credibility. *Donald G.*, 203 Conn. App. at 74.

> This Court concludes that Petitioner did not present to each appropriate state court his claim that his trial defense counsel rendered ineffective assistance of counsel by failing to investigate potential witnesses—aside from Charette--who would have provided testimony to discredit the victim's testimony about Petitioner's conduct at Okemo despite having the means to

do so. The state courts' review of Petitioner's failure to investigate claim concerning the Okemo incident was properly limited to Petitioner's allegations presented in his state court third amended petition and grounds presented to the appellate court that his trial defense counsel was ineffective because he failed to investigate the potential of calling Charette as a witness. *See* Connecticut Practice Book § 23-22(1) (petition must set forth "specific facts upon which each specific claim of illegal confinement is based").

Thus, to the extent Petitioner' third ground for relief in this matter asserts ineffective assistance of counsel on the basis of failing to investigate individuals at the Okemo house—other than Charette—despite having the financial means to do so, the Court agrees that such claim was not exhausted before the state courts.

### B.     Ground Four

In his fourth ground for relief, Petitioner asserts that he is actually innocent. Am. Pet., ECF No. 16 at 10-12. Petitioner has not exhausted this ground in the Connecticut courts.[9]

### C.     Issuance of a Stay

The Court's review of the record confirms that Petitioner's amended petition constitutes a mixed petition, containing both exhausted and unexhausted claims. Petitioner has not, however, met the two conditions required for the court to issue a stay: Petitioner provides no indication of circumstances amounting to good cause that prevented him from exhausting these grounds

---

[9] The Court will not dismiss this claim with prejudice because it cannot consider the merits of an individual claim, even if frivolous, in a habeas petition unless the Court dismisses the entire petition on the merits. *See Despres v. Comm'r of Correction*, No. 3:20-CV-929 (SRU), 2021 WL 2634450, at *13 (D. Conn. June 25, 2021) (declining to dismiss on the merits patently frivolous claim where court dismissed entire petition without considering merits of the petition); *Schwartz v. Comm'r of Corr.*, 2020 WL 6263545, at *4 (D. Conn. Oct. 23, 2020) (noting "unexhausted claims may be reviewed on the merits only if the habeas court is going to deny the entire petition.") (quoting *Trimm v. Sheahan*, 2014 WL 3670723, at *1 n.1 (N.D.N.Y. July 23, 2014)).

for habeas relief in the state courts prior to filing this action. Nor would dismissal of the present action lead to Petitioner's claims being time-barred. *See Rhines*, 544 U.S. at 277–78.

The limitations period in AEDPA commences when the judgment of conviction becomes final and is tolled for the period during which a properly filed state habeas petition is pending. *See* 28 U.S.C. § 2244(d)(1)-(2); *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012) (holding that the statute of limitations "runs from the latest of a number of triggering events, including the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.") (internal quotation marks omitted); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run") (*per curiam*). Thus, the one-year limitations period commences when the conviction becomes final, or upon completion of the direct appeal or conclusion or the time within which an appeal could have been filed.[10] 28 U.S.C. § 2244(d)(2); *see also Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (direct review of a conviction includes review by Supreme Court on petition for writ of certiorari).

Petitioner has had post-conviction proceedings pending continually since the date of his conviction. Thus, dismissal of the instant petition without prejudice does not risk a subsequent federal petition being untimely. If the Court were to deny Petitioner's amended petition after a

---

[10] The statute also provides that the limitations period may commence on: "(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date of which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). None of these provisions are relevant to this action.

merits review for all the grounds for relief, Petitioner could be precluded from bringing another petition under section 2254 that included any grounds for relief based on the ineffective assistance of appellate counsel claims now pending in his second habeas petition before the Connecticut Appellate Court (AC 45422). *See* 28 U.S.C. § 2244(b)(2).[11] In addition, Petitioner's third ground for relief based on his trial defense counsel's failure to investigate the Okemo incident would benefit from review by a state court because it is not entirely clear. *Gould v. Barone*, No. 3:21-CV-1237 (SVN), 2022 WL 1462227, at *7 (D. Conn. May 9, 2022) (noting that where petitioner's grounds for relief were difficult to discern, the merits of his claims would benefit from review by a state court).

Accordingly, the Court concludes that the motion to dismiss should be granted. However, this dismissal for failure to exhaust state court remedies is without prejudice to the filing of a renewed § 2254 petition. *See Slack v. McDaniel*, 529 U.S. 473, 485–89 (2000); *see also Green v. Quiros*, No. 3:20-CV-1217 (CSH), 2021 WL 1670293, at *4–5 (D. Conn. 2021).

## IV.    CONCLUSION

Respondent's Motion to Dismiss [**ECF No. 17**] is **GRANTED**. The amended petition is **DISMISSED** without prejudice to refiling a new petition after Petitioner has fully exhausted all available state court remedies as to all grounds in his amended petition.

---

[11] Section 2242(b) provides: "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—**(A)** the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or **(B)(i)** the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and **(ii)** the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

Petitioner is informed that he also has the option of proceeding only as to those grounds for which he has exhausted his state court remedies. Petitioner is cautioned, however, that if he chooses to proceed only on the exhausted claims, he will run the risk that any subsequent petition containing the unexhausted claims will not be considered by this court as it would constitute a second or successive petition. *See* 28 U.S.C. § 2244(b)(2).

If Petitioner wishes to proceed on his exhausted claims only, he must file, **within 30 days of this ruling**, a motion to reopen seeking: (1) to proceed as to any exhausted grounds in the Petition, and (2) to withdraw all of the unexhausted grounds. The motion must clearly identify the grounds that the Petitioner claims have been fully exhausted and explain how those grounds were exhausted in state court. Petitioner must also file an amended petition that contains only these exhausted claims as grounds for habeas relief.

The Petitioner is cautioned, however, that if he proceeds only as to such exhausted grounds, with the intention of presenting the unexhausted grounds to this court after they have been exhausted, he will run the risk that any such new petition will not be considered by this Court because it would constitute a second or successive petition. *See* 28 U.S.C. § 2244(b)(2).

The Court concludes that jurists of reason would not find it debatable that Petitioner failed to exhaust his state court remedies on all grounds asserted in this Petition. Thus, a certificate of appealability will not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding that when a district court denies a habeas petition on procedural grounds, a certificate of appealability should issue if jurists of reason would find debatable the correctness of the district court's decision).

_____/s/_____
Michael P. Shea

18

United States District Judge

**SO ORDERED** this  23rd  day of ___January___ 2023, at Hartford, Connecticut.