**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DONALD GRADY,                                    :
    Petitioner,                              :
                                             :
    v.                                       :       Case No. 3:22-cv-597 (MPS)
                                             :
ANGEL QUIROS, COMMISSIONER OF                    :
CORRECTION,                                      :
    Respondent.                              :

**RULING ON PETITION FOR HABEAS RELIEF**

Petitioner Donald Grady, an inmate incarcerated at MacDougall-Walker Correctional

Institution in Suffield, Connecticut, filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254. He challenges his conviction, after a jury trial, for sexual assault and risk of

injury to a child. Pet., ECF No. 1. In his second amended petition, Petitioner requests habeas

relief on the basis of ineffective assistance of his trial defense counsel. Second Am. Pet., ECF

No. 33.

Respondent has filed a memorandum, arguing that the Petition should be denied on the

merits. Resp't Mem., ECF No. 40. Petitioner has filed a reply brief. Pet'r Reply, ECF No. 43.

For the reasons that follow, the Petition is denied.

I.      **Procedural Background[1]**

Petitioner was the defendant in a criminal case, docket number CR09-0072182-T, in the

judicial district of Ansonia/Milford at Milford after he was arrested and charged with one count

of sexual assault in the first degree in violation of General Statutes § 53a-70(a)(1), one count of

---

[1] The Court's merits review of Petitioner's Second Amended Petition will include the relevant facts reasonably found by the jury stated in the decision on Petitioner's direct appeal, s*ee State v. Donald H.G.*, 148 Conn. App. 398, 400-404 (2014), and on appellate review of Petitioner's state habeas challenge. *Donald G. v. Comm'r of Correction*, 203 Conn. App. 58, 59-68 (2021).

sexual assault in the first degree in violation of General Statutes § 53a-70(a)(2),[2] one count of sexual assault in the third degree in violation of General Statutes § 53a-72a(a)(1)(A),[3] and three counts of risk of injury to a child in violation of General Statutes § 53-21(a)(2).[4] *See Grady v. Warden*, No. CV144006185S, 2019 WL 1093301, at *1 (Conn. Super. Ct. Jan. 28, 2019). After a jury trial, Petitioner was found guilty of all counts except the count of sexual assault in the first degree in violation of Connecticut General Statutes § 53a-70(a)(1) that stemmed from a 2008 Christmas party incident, for which the jury returned a verdict of not guilty. *State v. Donald H.G.*, 148 Conn. App. 398, 403 (2014).

On February 14, 2012, the trial court imposed a total effective sentence of thirty years of incarceration, ten years of which were mandatory, followed by five years of parole with special conditions, and lifetime registration as a sexual offender. *State v. Donald H.G.*, 148 Conn. App. at 403.

---

[2] Connecticut General Statutes § 53a-70(a)(1)-(2) provides: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person[.]"

[3] Connecticut General Statutes § 53a-72a(a)(1)(a) provides: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person[.]"

[4] Connecticut General Statutes § 53-21(a)(2) provides: "Any person who … has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child … shall be guilty of (A) a class C felony for a violation of subdivision (1) or (3) of this subsection, and (B) a class B felony for a violation of subdivision (2) of this subsection, except that, if the violation is of subdivision (2) of this subsection and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

Direct Appeal

Petitioner filed a direct appeal, arguing: (1) the trial court erred by allowing the state to introduce evidence of uncharged misconduct; (2) the trial court erred when it refused to conduct an in-camera review of the victim's psychological records; (3) the trial court responded improperly to a question posed by the jury during its deliberations and thereby deprived him of a fair trial; and (4) the prosecutor committed prejudicial misconduct during closing and rebuttal argument. *Id.* at 400.

The Appellate Court affirmed the trial court's judgment. *Id.* at 427. It held that: (1) the trial court did not abuse its discretion in admitting prior uncharged sexual misconduct evidence involving the victim (*id.* at 408-411); (2) the trial court did not abuse its discretion by denying Petitioner's in-camera review request because Petitioner's request was vague and speculative and because he had failed to show that the victim had a mental condition affecting her "ability to perceive, recall, or relate events or her testimonial capacity[;]"(*id.* at 413-414); (3) there was no reasonable probability the jury was misled by a trial court response to a jury inquiry, when viewed in combination with the court's main instructions to the jury (*id.* at 414-420); and (4) the prosecutor did not make any inappropriate remarks during closing and rebuttal argument and Petitioner had failed to provide legal authority for his claim of prosecutorial misconduct (*id.* at 420-427).

On May 7, 2014, the Connecticut Supreme Court denied certification for discretionary review. *State v. Donald H.G.*, 311 Conn. 951 (2014).

First Habeas Action

On April 30, 2014, Petitioner filed his first of two applications for writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Tolland. This first habeas action was assigned docket number TSR-CV14-4006185-S. *See Grady*, 2019 WL 1093301, at *1.

In an amended petition, Petitioner asserted that he received ineffective assistance from his counsel in violation of the Sixth Amendment "on four delineated grounds." *Id.* at *3. He asserted that his trial defense counsel was ineffective (1) by failing to elicit testimony from four witnesses (Linda and Gary Hoppes and Dennis and Janet Bludniki) with respect to his presence at a December 24, 2007 Christmas party; (2) by engaging in an attorney-client sexual relationship with Petitioner; (3) by referring to the complainant as a "victim" during trial and when he failed to object and correct the prosecutor's use of the term "victim;" and (4) by failing to "investigate, consult and present" Theresa Charette to impeach the victim's credibility regarding her testimony about uncharged sexual conduct between Petitioner and the victim during a family ski trip at Okemo Mountain. Resp't ex. D, ECF No. 18-10; *see Grady*, No. CV144006185S, 2019 WL 1093301, at *4-*7; *see also* Resp't ex. A at 75-78, Trial Transcript (victim testimony), ECF No. 18-1.

After a trial, the state habeas court denied Petitioner's amended petition on all four grounds. *Grady*, No. CV144006185S, 2019 WL 109330, at *5-*7. As to the first ground, the habeas trial court concluded (1) that Petitioner failed to show his trial defense counsel was "deficient for not asking the Hoppes and Bludnickis about the petitioner's absence from the December 24, 2007 family party[,]" which "would have jeopardized the defense to the charge arising from another date and incident when the petitioner had not acknowledged his presence

and physical contact with [the victim,]" and (2) that Petitioner failed to show how he was prejudiced. *Id.* at *5.

      The habeas trial court denied Petitioner's second ground because Petitioner's assertion of his sexual relationship with counsel was "completely not credible," "outlandish and, … only intended to humiliate former counsel." *Id.* at *6.

      As to the third ground, the habeas court recognized that the word "victim" had been used during the jury trial and "that reasonably competent criminal defense counsel would raise timely objections, request curative instructions, and refrain from using the term 'victim' after the trial court granted counsel's motion in limine to preclude the use of that phrase." *Id.* at *7. Nonetheless, the habeas court concluded that "its usage was not so prevalent as to prejudice the petitioner." *Id.* (noting "complainant was mostly referred to as C.D. or as the complainant, not as the victim.").

      With respect to fourth ground, the habeas trial court noted that Charette testified at the habeas trial that she did not know if Petitioner was at Okemo on the weekend at issue, which "leaves open the reasonable possibility that the petitioner was at Okemo, unbeknownst to [her] and not seen by her." *Id.* The habeas trial court concluded that Charette's "testimony was of marginal impeachment value and does not undermine this court's confidence in the outcome of the criminal trial." *Id.*

      Petitioner appealed the trial court's denial, asserting that the habeas court improperly found no ineffective assistance of counsel where his trial defense counsel (1) had failed to present testimony from four witnesses about the Petitioner's whereabouts at the family Christmas party on December 24, 2007; (2) had referred to the complainant as the "victim" and failed to

object or request a curative instruction when the prosecutor also referred to the complainant as the "victim," and (3) had failed to investigate the Okemo ski house allegations "and present an alibi defense, after Petitioner informed counsel to do so "with Ther[esa] (Tess) Charette wh[o]m CD [the victim] had placed on the scene the night in question." *See* Pet'r's ex. 14(a), Pet'r Appellate Brief, ECF No. 1-2 at 2. *See also Donald G. v. Comm'r of Correction*, 203 Conn. App. 58, 59–60, 74, *cert. denied*, 337 Conn. 907 (2021).

As to the first ground, the Appellate Court concluded that the habeas trial court properly held that Petitioner "failed to sustain his burden of overcoming the presumption that counsel's actions were the result of sound trial strategy." *Id.* at 69-70.

With regard to Petitioner's second claim, the Appellate Court affirmed that Petitioner failed to demonstrate that he was prejudiced by any deficient performance by trial defense counsel arising from references to "the victim" as Petitioner had been acquitted of one of the sexual assault charges. *Id.* at 72-73.

With respect to his third ground regarding failure to investigate and procure Charette's testimony, the Appellate Court noted Petitioner's trial defense counsel's testimony about Petitioner having admitted to being present at the Okemo ski trip; thus, the Appellate Court concluded that the "decision of the petitioner's trial counsel not to pursue testimony from a witness in an effort to rebut a claim that the petitioner had readily admitted as true cannot be deemed unreasonable or tactically unsound." *Id.* at 74-75.

On June 29, 2021, the Connecticut Supreme Court denied Petitioner's certification for appeal. *Donald G. v. Comm'r of Correction*, 337 Conn. 907 (2021).

Second Habeas Action

On June 19, 2017, Petitioner filed another application for a writ of habeas corpus in the

Judicial District of Tolland assigned docket number TSR-CV17-4008907-S. *Donald G. v.*

*Comm'r of Correction*, 2022 WL 375499, at *1 (Conn. Super. Ct. Jan. 20, 2022). In his amended

petition, Petitioner asserted ineffective assistance of appellate counsel on his direct appeal. *Id.*

The habeas trial court observed that Petitioner's "amended petition aver[red] ten distinct ways in

which appellate counsel rendered deficient performance on direct appeal, although the petitioner

has grouped them together into four groupings." *Donald G.*, 2022 WL 375499, at *6. The habeas

trial court framed the four groupings as follows:

> First (grounds one, two, and three), allegations related to the use of term "victim" by both
> the prosecutor and defense counsel; second (grounds four, five, and six), allegations
> related to the state's use of the petitioner's request for counsel as consciousness of guilt
> evidence; third (grounds seven and eight), allegations related to collusion between the
> prosecutor and defense counsel to sabotage the petitioner's alibi defense and mislead the
> jury; and fourth (grounds nine and ten), allegations related to improprieties when the state
> pointed to an individual in the public gallery of the courtroom to bolster the
> complainant's testimony and discredit the defense.

*Id.*

The habeas trial court held that Petitioner failed to show that his appellate counsel was

ineffective for failing to raise a claim on direct appeal challenging the use of the term "victim" as

the claim did not present a strong issue for appeal and "was not one that reasonably competent

appellate counsel should raise." *Id.* at *7**.** Similarly, the habeas trial court noted that Petitioner's

appellate counsel assessed that the references to his wanting an attorney "were not a major factor

that contributed to his convictions" and, therefore, did not present a strong due process claim for

appeal. *Id.* at *8. The habeas trial court concluded that Petitioner had not presented any evidence

of "'collusion' between the prosecutor and his defense counsel that served to undermine or

weaken a defense," and he failed to show "that appellate counsel was deficient for failing to raise

7

a claim on appeal based on grounds seven and eight" or that the outcome of the appeal would have been different" if he had raised such a claim. *Id.* at *9.

As to Petitioner's claim that appellate counsel was ineffective for failing to raise the issue of the prosecutor's pointing to an individual, the habeas trial court concluded Petitioner had shown neither that his appellate attorney "rendered deficient performance by not raising a claim on appeal regarding the prosecutors alleged gesture[,]" nor that he would have prevailed on appeal had the claim been raised. *Id.* at *10.

On April 11, 2022, Petitioner filed an appeal of the denial of his second habeas action. *See* case detail for TSR-CV17-4008907-S available on the website for the Connecticut Judicial Branch.[5] On March 5, 2024, the judgment was affirmed.[6]

<u>Federal Section 2254 Petition</u>

On April 18, 2022, Petitioner filed this federal petition under 28 U.S.C. § 2254. Pet., ECF No. 1. In an amended petition, he raised four grounds for relief: (1) violation of Petitioner's Sixth and Fourteenth Amendment due process rights based on his trial defense counsel's failure to elicit testimony from four defense witnesses about Petitioner's absence at a family party on December 24, 2007 to provide him an alibi for charged sexual conduct; (2) violation of Petitioner's Sixth and Fourteenth Amendment rights due to the references by trial defense counsel and the prosecutor to the complainant as a victim and defense counsel's failure to seek a curative instruction; (3) violation of Petitioner's Sixth and Fourteenth Amendment due process rights due to trial defense counsel's failure to investigate "anyone in the petitioner's case after

---

[5] https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV174008907S.

[6] See Case Detail for AC 45422 on the website for the Connecticut Judicial branch. http://appellateinquiry.jud.ct.gov/CaseDetail.aspx?CRN=76906&Type=AppealNo.

requesting $25,000.00 to do so" and for failing to present an alibi defense through the testimony of the victim's "friend when post-trial she displaced petitioner from the scene of the night of the alleged assault[;]" and (4) Petitioner's actual innocence of the crimes for which he was convicted. *See* Am. Pet., ECF No. 16. Respondent filed a motion to dismiss, arguing that the amended petition was a mixed petition with both exhausted and unexhausted grounds for relief. Mot. to Dis., ECF No. 17.

The Court granted Respondent's motion to dismiss without prejudice and advised Petitioner that he had the option of proceeding in an amended petition on only "those grounds for which he has exhausted his state court remedies." *Grady v. Quiros*, No. 3:22-CV-597 (MPS), 2023 WL 362833, at *1 (D. Conn. Jan. 23, 2023). *See* ECF No. 28. The Court also cautioned Petitioner "that if he chooses to proceed only on the exhausted claims, he will run the risk that any subsequent petition containing the unexhausted claims will not be considered by this court as it would constitute a second or successive petition." *Id.*

Petitioner filed a motion to reopen this matter to withdraw his unexhausted grounds for relief. Pet'r Mot. to Reopen, ECF No. 32. Petitioner also filed his Second Amended Petition. Second Am. Pet., ECF No. 33. Prior to granting the motion to reopen, the Court again advised Petitioner that "if he proceeds only as to these exhausted grounds, with the intention of later presenting any unexhausted grounds to this court after they have been exhausted, he will run the risk that any new petition will not be considered by this court because it would constitute a second or successive petition." Order, ECF No. 34. The Court instructed Petitioner to file a notice to indicate whether he still intended to proceed on only the grounds now fully exhausted despite the risk that a new petition asserting other grounds after full exhaustion could be barred.

9

*Id.* Petitioner filed his notice of intent to proceed on his exhausted grounds. Notice, ECF No. 36. Thereafter, the Court reopened this matter and instructed Respondent to file a response showing why the relief under section 2254 should not be granted. Order, ECF No. 37.

II.   **Review of the Merits**

A.   Legal Principles

1.  Section 2254

The court will entertain a petition for writ of habeas corpus challenging a state court conviction under § 2254 only if Petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2255(a). A claim that a state conviction was obtained in violation of state law is not cognizable in this court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotations omitted). This court cannot grant a petition for writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[7] This is a very difficult standard to meet. *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013).

---

[7] The federal court examines the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Clearly established federal law is found in holdings, not *dicta*, of the United States Supreme Court at the time of the state court decision. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).

It is not enough that the state court decision is incorrect or erroneous. *Eze v. Senkowski*, 321 F.3d 110, 124-25 (2d Cir. 2003). Rather, the state court application of clearly established law must be objectively unreasonable, a substantially higher standard. *Id.*; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, a state prisoner must show that the challenged court ruling "was so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Williams*, 529 U.S. 362, 389 (2000) ("state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

To determine whether habeas relief should be granted, the federal court must consider: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly established' when the state court ruled? (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent? (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2000), *cert. denied*, 534 U.S. 924 (2001).

When reviewing a habeas petition, the court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Id.* Moreover, this court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Petitioner asserts three grounds for habeas relief: (1) violation of Petitioner's Sixth and Fourteenth Amendment due process rights based on his trial defense counsel's failure to elicit testimony from four defense witnesses about Petitioner's absence at a family party on December 24, 2007 to provide him an alibi for charged sexual conduct; (2) violation of Petitioner's Sixth and Fourteenth Amendment rights due to trial defense counsel and the prosecutor referring to the complainant as a victim and defense counsel's failure to seek a curative instruction; (3) violation of Petitioner's Sixth and Fourteenth Amendment due process rights due to trial defense counsel's "'not wanting' to investigate Okemo ski house allegations and present an alibi defense, with Theresa (Tess) Charette whom the [complainant] placed on the scene the night in question." Second Am. Pet. at ¶¶ 12, 25, 30, ECF No. 33.

Respondent argues that the Connecticut court decisions do not contravene or unreasonably apply established federal law. Resp't Mem. at 15, ECF No. 40.

### 2. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, the moving party must demonstrate that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance prong of the two-part *Strickland* test requires a showing that "counsel's representation fell below an objective standard of reasonableness," in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688.

To satisfy the prejudice prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In applying this standard, a reviewing court must make every effort ... to eliminate the distorting effects of hindsight and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] might be considered sound trial strategy." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal quotation marks omitted) (brackets in original). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

In *United States v. Cronic, 466 U.S. 648* (1984), the Supreme Court "recognized a narrow exception to *Strickland's* holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the

deficiency prejudiced the defense." *Fla. v. Nixon*, 543 U.S. 175, 190 (2004) (citing *Cronic*, 466 at 658). The Supreme Court identified three "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658-9. *See Bell v. Cone*, 535 U.S. 685, 695–96(2002). As the Supreme Court explained in *Bell*, a presumption of prejudice arises (1) "where the accused is denied the presence of counsel at 'a critical stage,' … that held significant consequences for the accused[;]" (2) "if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[;]" or (3) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not[.]" *Id. (*citing *Cronic,* 466 U.S. at 659–662 (other internal citations omitted).

When pursuing a state-exhausted ineffective assistance claim in federal court, it is not enough for the petitioner "to convince [the] federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. *Eze*, 321 F.3d at 124 (quoting *Bell*, 535 U.S. at 699). Rather, petitioner must show that the state habeas court applied *Strickland* in an objectively unreasonable manner. *Id.*; *see also Williams v. Taylor*, 529 U.S. at 410 (unreasonable application of federal law different from incorrect application of federal law).

    B.    <u>Ground One</u>

In his first ground for relief, Petitioner claims that his counsel failed to elicit testimony from four witnesses—the Hoppes and Bludnickis—who would have established that he was not at a Christmas party on December 24, 2007, where the state alleged that he engaged in sexual criminal conduct against the claimant. Second Am. Pet. at ¶¶ 12-24.

"The victim's family held two separate Christmas parties annually, one on December 22 for the neighborhood (neighborhood party) and another on December 24 for immediate family and close friends (family party). The petitioner was charged with sexual assault for his alleged conduct at two of these Christmas parties: (1) the 2008 neighborhood party; and (2) the 2007 family party." *Donald G.*, 203 Conn. App. at 65.

The Connecticut Appellate Court's decision on direct appeal set forth the following relevant facts:

> On or about December 24, 2007, the victim's family had a Christmas party, which the defendant and others attended. During the party, the victim went into the garage, which had an upstairs room with a bar, pool table, television and bathroom, to get a beverage, during which time she encountered the defendant. When the defendant walked by the victim, he slapped her buttocks. "[F]lustered and annoyed," the victim retreated to her bedroom, where the defendant appeared shortly thereafter. The defendant, who had been drinking but did not appear intoxicated, asked the victim to kiss him or to perform fellatio on him. The victim declined, but the defendant began to rub her back and squeeze her buttocks. The defendant also tried to convince the victim to go for a ride with him, but she refused and returned to the party. On the basis of these facts, the state charged the defendant with one count of sexual assault in the third degree and one count of risk of injury to a child.

> On or about December 24, 2008, the victim's family again was hosting a Christmas party, which the defendant and others attended. During the party, the victim was watching television in the room above the garage, when the defendant, who appeared to be intoxicated, entered the room and asked the victim to make him a cocktail. As she made the cocktail, the defendant kept trying to get close to the victim, but she kept moving away. The victim was scared and just wanted the defendant to let her go. When she tried to exit the room, the defendant, whom the victim described as a "really big guy [who is] strong," pinned her against the wall and began to run his hands down her body, kissing her and grabbing her chest, while holding both of her hands with one of his hands. The victim also testified that the defendant digitally penetrated her vagina during this assault. The victim was afraid, especially because of the defendant's size and the fact that she "was a scrawny kid...." She "just—I wanted help ... [and] didn't want this to happen anymore." On the basis of these facts, hereinafter referred to as the "2008 Christmas

15

party incident," the state charged the defendant with one count of sexual assault in the first degree.

*State v. Donald H.G.*, 148 Conn. App. at 401–02. At the habeas trial, Petitioner's mother, Linda Hoppes, admitted on cross examination that she had testified at Petitioner's criminal trial that she and her husband generally left the family and neighborhood Christmas parties prior to their conclusion and that they could not confirm Petitioner's whereabouts thereafter. Resp't App'x B at 45-49 (April 25, 2018 habeas Trial Transcript), ECF No. 18-7.[8] Petitioner's step-father, Gary Hoppes, admitted that he had testified at Petitioner's criminal trial about his difficulty in recalling dates, that he and his wife and the Bludnickis would leave prior to the end of the party, and that he did not know Petitioner's location after he went to bed. *Id.* at 55-57.

On appellate collateral review, the Connecticut Appellate Court explained:

During the underlying criminal trial, the petitioner's mother and stepfather, Linda H. and Gary H., as well as two family friends, testified that they had not seen the petitioner at the 2008 neighborhood party. The petitioner subsequently was acquitted of sexual assault in the first degree stemming from the allegations regarding that date. Trial counsel did not question these four witnesses regarding the petitioner's whereabouts on the evening of the 2007 family party. He did, however, question three of these four witnesses as to the petitioner's whereabouts during the 2007 neighborhood party, despite the fact that no charges stemmed from that date. The petitioner asserts that trial counsel rendered constitutionally ineffective assistance because he failed to question these four witnesses regarding his whereabouts during the 2007 family party, and instead questioned them extensively about the 2007 neighborhood party.

At the habeas trial, the petitioner presented testimony from Linda H. and Gary H., both of whom stated that the petitioner did not attend the 2007 family party, nor any of the other parties in question. Notably, the petitioner did not present testimony from the two family friends, whom he claims should have been questioned at his criminal trial regarding his whereabouts on the day of the 2007 family party. The petitioner speculates that the two family friends would have testified to his absence at the 2007 family party but failed to

---

[8] The Court cites to the trial transcript page numbers rather than the ECF page number.

provide evidence at the habeas trial to support that contention. In addition, the petitioner's claim overlooks another important aspect of the state's case against him. Specifically, at the petitioner's criminal trial, the state presented the testimony of Detective Steven Young, who recounted the petitioner's police interview and detailed the petitioner's admission that he had attended the 2007 family party. Young testified that the petitioner provided an intricate account of the evening and offered an explanation for his allegedly accidental touching of the victim's buttocks, suggesting that he and the victim had been wrestling together. Thus, the petitioner not only acknowledged his presence at the 2007 family party, but his statement to the police also squarely contradicted the very testimony he now contends should have been presented by his trial counsel.

At the habeas trial, the petitioner's trial counsel testified that he decided not to question the four witnesses regarding the 2007 family party following the petitioner's acknowledgment to a law enforcement official that he had in fact attended the event. Trial counsel stated that such questioning could have jeopardized the petitioner's defense. Specifically, he feared calling into question the credibility of the witnesses who had testified to the petitioner's absence from the 2008 neighborhood party. Trial counsel testified that he sought to discredit the victim's account of events by highlighting the inconsistencies between her testimony at trial and the statements that she had provided to law enforcement. Trial counsel also testified that he highlighted the purported lapses made by law enforcement officials while they investigated the victim's allegations.

*Donald G.*, 203 Conn. App. at 65–67. In review of Petitioner's argument that his trial counsel rendered ineffective assistance of counsel by failing to examine the four witnesses about his presence at the 2007 family Christmas party, the Appellate Court explained:

the habeas court noted that, had trial counsel chosen to examine the four proposed witnesses regarding the 2007 family party, it would have served only to jeopardize the defense by tarnishing the credibility of those much-needed witnesses regarding the events of the 2008 neighborhood party. Moreover, the court found that the petitioner had failed to show that the testimony of the two family friends would have helped with his defense. The court additionally concluded that the testimony of Linda H. and Gary H. regarding the evening of the 2007 family party, as presented at the habeas hearing, left a period of several hours during which no witnesses could account for the whereabouts of the petitioner. This temporal gap on the evening of the 2007 family party, according to the court, would have allowed ample opportunity for the petitioner to attend the party in

17

question unbeknownst to the witnesses.

*Donald G.*, 203 Conn. App. at 67. Thus, the Appellate Court concluded that the habeas court had "properly determined that the petitioner failed to establish his claim that trial counsel's decision to refrain from questioning witnesses regarding the petitioner's whereabouts on the evening of the 2007 family party constituted deficient performance." *Id.* at 70.

In *Strickland*, the United States Supreme Court advised that "the adversary system requires deference to counsel's informed decisions," and "strategic choices must be respected … if they are based on professional judgment." *Strickland*, 466 U.S. at 681. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Thus, following *Strickland*, courts are "especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005).

In upholding the habeas court decision, the Appellate Court explained that Petitioner "presented no evidence at the habeas trial that anyone except for his parents would have attested to his absence from the 2007 family party[,]" and trial counsel's decision not to question Petitioner's mother and step father about his whereabouts at the 2007 family party was not objectively unreasonable "because the jury could have deemed them to be biased witnesses seeking to protect their son, especially when the parents' account would have been contradicted by the petitioner's own statements to law enforcement." *Id.* at 68.

Upon review of the record, this Court concludes that the Appellate Court reasonably applied the standard under *Strickland* to determine that Petitioner had not demonstrated his trial counsel's deficient performance with regard to decision not to examine the four witnesses about the 2007 family Christmas party. Thus, the Connecticut Appellate Court neither contravened nor unreasonably applied established federal law.

C.    Ground Two

In his ground two, Petitioner asserts that the Connecticut Appellate Court contravened federal law by affirming the habeas court's determination that Petitioner was not prejudiced by the use of the term victim during his trial and his trial counsel's failure to seek a curative instruction. Second Am. Pet. at ¶ 25. Petitioner argues that the use of the term victim during the trial by the prosecutor and his defense counsel interfered with his presumption of innocence. Pet'r. Mem. at 32, ECF No. 43. *See Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.") (citing *Coffin v. United States*, 156 U.S. 432(1895))

In its review of this ground, the Connecticut Appellate Court noted the following facts:

Prior to the commencement of trial, the petitioner's trial counsel filed a motion with the court to prohibit the use of the word "victim" by either party. The court granted the motion in limine and cautioned all parties to refrain from addressing the complainant as the "victim." During the course of the trial, however, both the prosecutor and the petitioner's trial counsel sporadically used the word "victim" when referencing the complainant in the presence of the jury. The prosecutor referred to the complainant as the "victim" on six occasions and trial counsel did so twice. Trial counsel did not object to the prosecutor's violation of the court order or request a curative instruction from the court.

19

*Donald G.,* 203 Conn. App. 58, 70. The Appellate Court noted that the parties had "predominately identified the witness as either the complainant or by the use of her initials." *Id.* at 73. Under *Strickland*, Petitioner can only prevail on his claim of ineffective assistance of counsel if he shows (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The Appellate Court considered under state law whether Petitioner had satisfied the prejudice prong by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 73. The Connecticut Appellate Court ruled that habeas court had not "improperly concluded that the petitioner failed to demonstrate that he was prejudiced by any deficient performance of his trial counsel relating to references to the complainant as the victim because … the petitioner was acquitted of one of the charges against him." *Strickland* articulates the same standard for a showing of prejudice applied by the Connecticut Appellate Court. *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Thus, the Appellate Court's application of *Strickland* was not unreasonable, or an unreasonable determination of the facts based on the evidence before the court.

Furthermore, this Court is unable to find any clearly established federal law, as established by the Supreme Court, holding that reference to the complaining witness as the "victim" violates a criminal defendant's constitutional rights. *Harris v. Schroeder*, No. 2:22-CV-126, 2023 WL 5925623, at *21 (W.D. Mich. Sept. 12, 2023) (citing cases determining no

prejudice incurred by use of the term "victim"); *see also Kaufman v. Milyard*, No. 07-cv-01458-REB-KMT, 2009 WL 3254485, at *8 (D. Col. Oct. 6, 2009) (denying habeas relief because use of the term "victim" did not violate clearly established federal law). In addition, the record shows that the jury was instructed that Petitioner as a defendant in criminal prosecution was presumed to be innocent unless proven guilty beyond a reasonable doubt and that statements by lawyers were not considered evidence. Resp't App'x A at 78-82 (criminal trial transcript 11/18/2011), ECF No. 18-4.

Accordingly, this Court concludes that Connecticut Appellate decision—affirming the habeas court's rejection of Petitioner's claim for habeas relief asserted in his second ground—was neither contrary to clearly established federal law nor an unreasonable application of clearly established federal law under *Strickland.*

D.    Ground Three

In his third ground, Petitioner asserts that his trial counsel was constitutionally deficient for "not wanting" to investigate Okemo ski house allegations and "present an alibi defense, with Theresa (Tess) Charette whom CD placed on the scene the night in question." Second Am. Pet. at ¶ 30.

As the Connecticut Appellate Court noted, this claim concerns the state's introduction during the criminal trial (over trial counsel's objection) "of misconduct evidence of additional sexual contact between the petitioner and the victim during a family ski trip at Okemo Mountain." *Donald G.*, 203 Conn. App. at 74. In his state habeas matter, Petitioner claimed that "if called to testify, Charette would have so undermined the credibility of the victim's account of

21

this event that the entirety of her trial testimony would have been irreparably tainted in the eyes of the jury." *Id.*

At his habeas trial, Petitioner questioned his trial counsel about whether he had been asked by Petitioner to investigate the other Okemo guests and whether he would have investigated Charette or "anybody else at the house;" his trial defense counsel responded that he had not, that he recollected Petitioner having admitted to being at the location, and that he "wasn't going to help prove the state's case either if [he] knew [Petitioner] already told him [Petitioner was] there." Resp't App'x B at 69 (April 26, 2018 Habeas Trial Transcript), ECF No. 18-8. The habeas court concluded that Charette's testimony left open a "reasonable possibility" of Petitioner's presence at Okemo "unbeknownst to [Charette] and not seen by her" and was of "marginal impeachment value[.]" *See Grady*, 2019 WL 1093301, at *7. The habeas court concluded Petitioner had "shown neither that counsel rendered deficient performance nor the required prejudice." *Id.*

Thereafter, the Connecticut Appellate Court "conclude[d] that the court properly rejected the petitioner's claim that his trial counsel's performance was constitutionally deficient as it related to the uncharged misconduct admitted against him." *Donald G.*, 203 Conn. App. at 75. The Court noted that trial counsel's testimony about Petitioner's admission to his presence at the Okemo ski trip "stands in firm opposition" to his claim that Charette could testify that he was not present at Okemo at the time relevant to the uncharged sexual conduct. *Donald G.*, 203 Conn. App. at 74 ("That admission stands in firm opposition to the very testimony that the petitioner now claims trial counsel failed to investigate and to present at trial.").

The Court concludes that the Appellate Court rendered a reasonable application of *Strickland*'s highly deferential standard to Petitioner's claim of ineffective assistance of counsel. Under *Strickland*, counsel has "a duty to make reasonable investigation or to make a reasonable decision that make particular investigations unnecessary[,]" and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." 466 U.S. at 691. As the Appellate Court noted in this instance, especially in light of the habeas court's finding that "there was a reasonable possibility that the petitioner was at Okemo," *Grady*, 2019 WL 1093301 *7, "[t]he decision of the petitioner's trial counsel not to pursue testimony from a witness in an effort to rebut a claim that the petitioner had readily admitted as true cannot be deemed unreasonable or tactically unsound." *Donald G.*, 203 Conn. App. at 75. Thus, the Appellate Court reasonably applied *Strickland* when it determined that Petitioner failed to show deficiency of counsel's performance or prejudice arising from his counsel's failure to investigate and call Charette, who could offer only testimony of marginal value. Accordingly, Petitioner's request for habeas relief must be denied on this ground because the Appellate Court neither contravened nor unreasonably applied clearly established federal law.

### III.   Conclusion

For the foregoing reasons, the Court DENIES the Petition for Relief under 28 U.S.C. § 2254. The clerk is directed to enter judgment in favor of Respondent and to close this case.

Any appeal from this order would not be taken in good faith because Petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, a certificate of appealability will not issue.

/s/Michael P. Shea_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 3rd day of April 2024, at Hartford, Connecticut.